**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Nicholas D. LORD; Anthony Tiano,
Defendants–Appellants.**

**Nos. 89–1252, 89–1256.**

United States Court of Appeals,
Tenth Circuit.

July 11, 1990.

Michael G. Katz, Federal Public Defender, and Susan L. Foreman, Asst. Federal Public Defender, Denver, Colo., for defendants-appellants.

Michael J. Norton, U.S. Atty., and Linda Kaufman, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Before ANDERSON, BARRETT, and BALDOCK, Circuit Judges.

PER CURIAM.

Defendants Anthony Tiano and Nicholas Lord appeal their criminal convictions on twelve counts of wire fraud, in violation of 18 U.S.C. § 1343 (1982).[1] Defendants were

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cases are

convicted, after a jury trial, for their involvement in a fraudulent telemarketing scheme. The district court sentenced both defendants, pursuant to the United States Sentencing Guidelines, to twelve months' incarceration.

On appeal, both defendants assert the following arguments: 1) the evidence was insufficient to convict them of the crimes charged; 2) the trial court erred by admitting evidence of the truthful character of three government witnesses; and 3) the trial court denied defendants equal protection of the laws by refusing to credit their sentences for time spent in a halfway house as a condition of their release on bond. Defendant Lord asserts a fourth argument: the trial court erred in determining defendant Lord was not entitled to a two-level downward adjustment, under the sentencing guidelines, for being a minor participant in the fraudulent scheme.

In order to obtain a conviction for wire fraud under 18 U.S.C. § 1343, the government must establish 1) an interstate transmission by means of wire, 2) for purposes of executing a scheme or artifice to defraud. *See United States v. Mann,* 884 F.2d 532, 536 (10th Cir.1989). Upon careful review of the record, and considering both direct and circumstantial evidence and the inferences that can be drawn therefrom in the light most favorable to the government, *see id.* at 534–35, we determine sufficient evidence existed to support the convictions of both Mr. Tiano and Mr. Lord for wire fraud.

■ Defendants next argue that the trial court erred in admitting evidence of the truthful character of three of the government's witnesses before the witnesses' credibility had been challenged, contrary to Fed.R.Evid. 608(a)(2). Rule 608(a)(2) provides that "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked." On direct examination of each of these three witnesses, the government elicited testimony concerning the existence of plea and cooperation agreements between these witnesses and the government. The witnesses further testified concerning the provisions of these agreements requiring them to testify truthfully and subjecting these witnesses to prosecution for perjury if their testimony was untruthful.

■ Because defendants did not raise an objection at trial to the admission of this evidence, we will not disturb the defendants' convictions absent a showing of plain error. Fed.R.Crim.P. 52(b); *see also United States v. Young,* 470 U.S. 1, 14–16, 105 S.Ct. 1038, 1045–47, 84 L.Ed.2d 1 (1985). Before determining whether plain error existed, however, we must first determine whether the trial court committed any error. *See Young,* 470 U.S. at 14, 105 S.Ct. at 1045–46 (after determining error was committed, Court then addressed whether the error amounted to plain error, justifying reversal); *cf. United States v. Martinez,* 890 F.2d 1088, 1094 (10th Cir.1989) (court first determined whether alleged prosecutorial misconduct was error, before deciding whether error was harmless), *cert. denied,* —— U.S. ——, 110 S.Ct. 1532, 108 L.Ed.2d 771 (1990).

The circuit courts are divided on the issue of when the government may present evidence of the truthfulness provisions of a witness's plea or cooperation agreement with the government. The majority of circuits allow the government to admit evidence of the truthfulness provisions of an agreement on direct examination of a witness, prior to any challenge to the witness's credibility. *See United States v. Drews,* 877 F.2d 10, 12 (8th Cir.1989); *United States v. Edelman,* 873 F.2d 791, 795 (5th Cir.1989); *United States v. Mealy,* 851 F.2d 890, 898–900 (7th Cir.1988); *United States v. Townsend,* 796 F.2d 158, 162–63 (6th Cir.1986); *United States v. Oxman,* 740 F.2d 1298, 1302–03 (3d Cir.1984), *vacated and remanded on other grounds sub nom. United States v. Pflaumer,* 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985); *United States v. McNeill,* 728 F.2d 5, 14 (1st Cir.1984); *United States v. Henderson,* 717 F.2d 135, 137–38 (4th Cir. 1983); *cf. United States v. Sobamowo,* 892

therefore ordered submitted without oral argument.

F.2d 90, 95 n. 3 (D.C.Cir.1989) (witness's testimony that he was ordered by the court to offer his full cooperation as part of a plea bargain did not serve to impermissibly bolster the witness's testimony), *petition for cert. filed,* No. 89–6943 (Mar. 16, 1990). These courts have noted that evidence concerning a plea agreement and its provisions may have both a bolstering and an impeaching effect on the witness's credibility. *See, e.g., Drews,* 877 F.2d at 12; *Townsend,* 796 F.2d at 163; *McNeill,* 728 F.2d at 14; *see also United States v. Bowie,* 892 F.2d 1494, 1499 (10th Cir.1990). Further, introduction of this evidence enables the jury to more accurately assess the witness's credibility, *see Sobamowo,* 892 F.2d at 95 n. 3; *Drews,* 877 F.2d at 12; *Mealy,* 851 F.2d at 899; *Townsend,* 796 F.2d at 163, regardless of whether the defense intends to use the agreement to impeach the witness's testimony, *see McNeill,* 728 F.2d at 14; *Henderson,* 717 F.2d at 138.

The Second Circuit, however, has held that, while the government may present evidence of the existence of an agreement and the witness's understanding of that agreement prior to any challenge to the witness's credibility, it is error for the government to introduce evidence of the agreement's truthfulness requirements prior to a challenge to the witness's credibility. *See United States v. Cosentino,* 844 F.2d 30, 32–35 (2d Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988). The Eleventh Circuit also prohibits introduction of the truthfulness provisions of an agreement until the defense challenges the witness's credibility. *See United States v. Cruz,* 805 F.2d 1464, 1479–80

(11th Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 and 482 U.S. 930, 107 S.Ct. 3215, 96 L.Ed.2d 702 (1987).[2]

The Second Circuit has determined that the existence of an agreement impeaches, rather than bolsters, the witness's credibility and has further determined that it is necessary to allow the government to establish the existence of an agreement between the government and the witness on direct examination, in order to prevent the jury from improperly inferring, when the agreement is brought up on cross-examination, that the government has tried to conceal that fact. *See, e.g., Cosentino,* 844 F.2d at 33. Admission of the entire plea agreement or evidence concerning the truthfulness provisions included in the agreement, however, tends to bolster, rather than impeach, the witness's credibility and, therefore, is not properly admitted into evidence until the defense has challenged the witness's credibility. *See id.* The Second Circuit, however, has acknowledged difficulties created by its procedure for admitting evidence concerning the provisions of an agreement. *See id.* at 33 n. 1 (noting that other circuits do not distinguish between the bolstering and impeaching provisions of a plea or cooperation agreement in admitting evidence of the agreement and its provisions, the Second Circuit stated that "[w]ere we writing on a blank slate, we might have followed the other circuits that avoid the distinctions we have required judges and lawyers to make during the heat of trial").

In light of the dual nature of a plea or cooperation agreement in both impeaching

---

**2.** We note that the Ninth Circuit has held that the admission of the truthfulness provisions of an agreement between the government and a witness into evidence during direct examination amounts to improper vouching for the witness's credibility by the government. *See United States v. Lew,* 875 F.2d 219, 223 (9th Cir.1989) (citing *United States v. Wallace,* 848 F.2d 1464, 1474 (9th Cir.1988)). These Ninth Circuit decisions rely primarily on the principle that the government may not personally vouch for the credibility of its witness, either by expressly assuring the jury of the witness's veracity or by inferring that the government possesses independent evidence, not before the jury, verifying the witness's testimony. *See, e.g., Lew,* 875 F.2d

at 223; *Wallace,* 848 F.2d at 1473–74; *United States v. Shaw,* 829 F.2d 714, 716–18 (9th Cir. 1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988). Because this court has distinguished arguments asserting the government has personally vouched for the credibility of its witness and arguments asserting the government improperly bolstered the witness's credibility prior to any challenge to the witness's credibility, contrary to Rule 608, *see Bowie,* 892 F.2d at 1499 n. 1, and because defendants in the instant appeals argue only that the government improperly bolstered the witnesses' credibility contrary to Rule 608, these Ninth Circuit cases are not relevant to this court's determination in this case.

and bolstering the credibility of a witness, *see Bowie*, 892 F.2d at 1499, and the difficulties noted by the Second Circuit in drawing fine distinctions between which provisions of an agreement are bolstering and which are impeaching, *see Cosentino*, 844 F.2d at 33 n. 1, we adopt the reasoning of the majority of circuits addressing this issue and hold that it was not error for the trial court to allow the government, during its direct examination, to present evidence of the agreements between the government and the witnesses, including testimony concerning the truthfulness provisions contained in those agreements.

■ Next, both defendants assert the sentencing court erred in refusing to give defendants credit on their sentences for time spent in a halfway house as a condition of their release on bond prior to the commencement of their sentences. "The [United States] Attorney General has the initial discretion to credit a prison term with time spent in custody prior to commencement of sentence. A defendant must therefore exhaust his administrative remedies with the Attorney General before seeking review." *United States v. Woods*, 888 F.2d 653, 654 (10th Cir.1989) (citations omitted), *cert. denied*, — U.S. —, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990). Because defendants have failed to allege or establish that they have exhausted their administrative remedies, this court is precluded from considering the merits of these arguments.

■ Finally, defendant Lord challenges the district court's determination, in applying the sentencing guidelines, denying Mr. Lord a downward adjustment for being a minor participant in the fraudulent scheme. The sentencing guidelines provide for a two-level downward adjustment if the defendant was a minor participant in the criminal activity for which he was convicted. United States Sentencing Commission, *Guidelines Manual*, § 3B1.2(b). A minor participant is any participant who is less culpable than most of the other participants, but whose role cannot be described as minimal. *Commentary to Sentencing Guidelines*, § 3B1.2. A minimal participant is one who is among the least culpable of those involved in the criminal activity, in light of his lack of knowledge or understanding of the scope and structure of the criminal enterprise and the activity of the other individuals involved. *Id.*

This court reviews a sentencing court's factual determinations under a clearly erroneous standard. *See United States v. Beaulieu*, 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). Because the evidence adduced at trial supported the sentencing court's determination that defendant Lord was not entitled to a downward adjustment for playing only a minor role in the fraudulent scheme, the sentencing court's determination was not clearly erroneous.

The judgments of the United States District Court for the District of Colorado are AFFIRMED.