994 F.2d 844
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES of America, Appellee,
v.
Derrick WALKER, Appellant.
 No. 92-3530.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: March 16, 1993.
Filed: May 14, 1993.
 
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 PER CURIAM.
 
 
 1
 Derrick Walker appeals his convictions on one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of using a firearm in a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Walker contends the convictions in the district court[1] should be reversed because there is insufficient evidence to support the jury's guilty verdict. We affirm.
 
 I.
 
 2
 On September 15, 1991, officers of the Omaha Police Division were conducting surveillance at the Pleasantview Housing Project in Omaha, Nebraska, after receiving complaints the area was being used as an "open air drug market."
 
 
 3
 Shortly before midnight, Sergeants Mark Sundermeier and Kurt Sorys received a radio call from a surveilling officer, who described the suspicious activity of three vehicles that arrived and entered a parking lot in the Pleasantview area. The occupants got out of their cars and, for the next few minutes, talked with each other, occasionally walking back and forth between the cars. They then returned to their own cars and left in different directions.
 
 
 4
 The surveillance officer relayed a description of the vehicles, and Sundermeier and Sorys proceeded to follow one of those cars as it drove past their marked cruiser. Sundermeier and Sorys then stopped the car for making a right turn without using a turn signal. As he approached the vehicle, Sundermeier noticed a pistol located on the console between the two front seats. He yelled to Sorys, who reached into the vehicle and pulled out a loaded Smith and Wesson 9 mm. semi-automatic pistol.
 
 
 5
 Sundermeier then conducted a pat-down search of Walker and discovered a large amount of cash in Walker's front pocket and a baggie of marijuana. Searching the interior of Walker's vehicle, Sorys found a double-edged boot knife and a Tylenol 3 with codeine tablet underneath the driver's seat. The officers placed Walker under arrest for carrying a concealed weapon and for possession of marijuana and codeine, a controlled substance.
 
 
 6
 At Omaha's Central Police Headquarters, Sundermeier conducted a strip search of Walker and observed a piece of plastic protruding from Walker's buttocks. Sundermeier asked Walker to remove the plastic, and after initially refusing, Walker retrieved the baggie and gave it to Sundermeier. The contents of the baggie were examined by a forensic chemist, who determined the substance was 3.3 grams of crack cocaine. Sundermeier then counted the cash originally found in Walker's front pocket, determining there was $1,045 in $100, $50, $20, $10 and $5 bills. When asked how much money he thought there was, Walker said $780.
 
 
 7
 Walker subsequently consented to a search of his car in which the officers found a Ruger Mini-14 rifle and large amounts of ammunition, in addition to various items of jewelry.
 
 
 8
 Walker was subsequently charged by a two-count indictment. The first count charged him with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1); the second count charged him with using a firearm in a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Walker entered pleas of not guilty to both counts.
 
 
 9
 At trial, Sundermeier testified that, in his opinion, Walker clearly intended to distribute the crack cocaine, noting: (1) he has never seen so much cocaine used for personal use; (2) the street value of the cocaine was between $500 and $700; (3) when arrested, Walker had no paraphernalia with him to ingest the cocaine; (4) the large sum of money consisting of large denominations and a lack of $1 bills is typical of drug transactions involving crack cocaine; (5) the strong correlation between narcotics dealing and firearms; and (6) although Walker claimed to possess the cocaine to make "primo" cigarettes by lacing the marijuana cigarette with crack residue, the 3.3 grams is in excess of what is needed, given the amount of marijuana seized.
 
 
 10
 Special Agent David Lomax of the Bureau of Alcohol, Tobacco, and Firearms testified about a joint ATF/DEA undercover investigation into suspected narcotics trafficking by Walker. Lomax testified that on August 3, 1991, a few weeks before Walker was arrested, Lomax and DEA Agent Paul Orduna went to Walker's apartment and asked him if he was interested in purchasing a machine gun. Walker responded yes, indicating he wanted the gun because he was having problems with rival dealers. Lomax also testified he and Orduna asked Walker if he had any cocaine to sell. Walker stated that while he had no crack cocaine at the moment, he could arrange to get some.
 
 
 11
 Lomax testified that on August 14, 1991, he and Orduna went to Walker's residence to show him a machine gun. While waiting for Walker to answer the door, an individual identifying himself as "Little John" approached, seeking to purchase a $20 rock from Walker. Lomax testified that Walker told "Little John" to come back later.
 
 
 12
 The jury returned a guilty verdict on both Counts I and II, and the district court sentenced Walker to forty-one months on Count I and sixty months on Count II.
 
 
 13
 Walker files this timely appeal.
 
 II.
 
 14
 Walker first contends the evidence adduced at trial is insufficient to support the jury's guilty verdict for possession with intent to distribute crack cocaine.
 
 
 15
 In reviewing a sufficiency of the evidence claim, this court is charged with reviewing the evidence in the light most favorable to the government. United States v. Starcevic, 956 F.2d 181, 183 (8th Cir. 1992). A jury verdict will be reversed "only 'if the evidence is such that reasonably-minded jurors must have a reasonable doubt as to the existence' of one or more essential elements of the charged offense." Id. (citing United States v. Powell, 853 F.2d 601, 604 (8th Cir. 1988)).
 
 
 16
 Walker contends he purchased the 3.3 grams of crack cocaine for personal use, and not distribution. Walker argues neither Sundermeier nor Sorys ever saw him engage in any illegal activity. He claims they never witnessed him exchange money or drugs in the Pleasantview parking lot and, although Lomax and Orduna attempted to purchase drugs from him, no sale ever took place. He also notes the Government offered no testimony that any person ever purchased cocaine from him.
 
 
 17
 The Government contends the evidence presented at trial is sufficient to support the jury's guilty verdict of possession with intent to distribute crack cocaine.
 
 
 18
 As we stated in United States v. Shurn, 849 F.2d 1090, 1093 (8th Cir. 1988), "intent to distribute may be proven by either direct or circumstantial evidence and may be inferred from such things as the possession of a large quantity of a controlled substance, its high purity level, the presence of paraphernalia used to aid in the distribution of drugs, large sums of unexplained cash, and the presence of firearms." Id.
 
 
 19
 Walker's arrest led to the discovery of 3.3 grams of crack cocaine, $1,045 of unexplained cash in large denominations, several firearms, a knife, and a large amount of jewelry. In our opinion, this physical evidence, in addition to the testimony of Sundermeier and Lomax, is sufficient to support the jury's guilty verdict for possession with intent to distribute.
 
 III.
 
 20
 Walker also contends the evidence adduced at trial is insufficient to support the jury's verdict for using a firearm in a drug trafficking crime. Walker argues the firearms discovered in his car were for his own protection and the protection of his property. He asserts that because he did not possess crack cocaine with intent to distribute, he may not be found guilty of using a firearm in a drug trafficking crime.
 
 
 21
 In our opinion, the record contains sufficient evidence to support Walker's conviction on the firearm charge. "The offense of using a firearm [in violation of 18 U.S.C. § 924(c) ] requires a predicate drug trafficking crime." United States v. Watson, 953 F.2d 406, 408 (8th Cir. 1992). As we stated above, there is sufficient evidence here to support Walker's conviction for possession with intent to distribute cocaine.
 
 
 22
 In our view, the presence and accessibility of loaded firearms and additional ammunition found in Walker's vehicle, in conjunction with the large quantity of cocaine, unexplained cash and jewelry, establishes a "sufficient nexus" between the firearms and the drug trafficking offense to support Walker's conviction on the weapons charge. See Watson, 953 F.2d at 409.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The Honorable William G. Cambridge, United States District Judge for the District of Nebraska