**UNITED STATES of America, Appellee,**

v.

**Rodney THOMPSON, aka Dion Rodney McKenzie, aka Dion Ramond McKenzie, Appellant.**

No. 91–2802.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1992.

Decided Aug. 3, 1992.

Gary L. Leftridge, Kansas City, Mo., argued, for appellant.

E. Eugene Harrison, Kansas City, Mo., argued (Charles F. Teschner, Kansas City, Mo., on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, THEODORE McMILLIAN, Circuit Judge, and HARRY W. WELLFORD, * Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Rodney Thompson appeals from a final judgment entered in the District Court[1] for the Western District of Missouri, upon a jury verdict, finding him guilty of attempting to possess with intent to distribute 50 grams or more of "crack" cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and with using a communication facility to facilitate that offense in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. The district court sentenced Thompson under the federal sentencing guidelines to 327 months imprisonment, ten years supervised release, and a fine of $2000. For reversal, Thompson argues the district court erred in (1) denying his motion for judgment of acquittal on grounds of insufficiency of the evidence for the jury to convict, (2) denying his motion for judgment of acquittal on grounds of ineffective assistance of counsel, and (3) denying his motion to declare the federal sentencing guidelines unconstitutional on their face and as applied to him under the Fifth and Eighth Amendments.

For the reasons discussed below, we affirm the judgment of the district court.

FACTS

On July 31, 1990, U.S. postal inspectors discovered a suspicious package at the Los Angeles airport, addressed to "Tony Williams" at 2843 Campbell in Kansas City, Missouri. Inspectors checked the address and determined that no one by the name of "Tony Williams" lived at that address. After the package arrived in Kansas City, postal inspectors obtained a warrant to search the package. They found 156.96 grams of "crack" cocaine inside.

The inspectors then conducted a controlled delivery[2] of the package on August 2, 1990. Surveillance was set up and an inspector, dressed as a mail carrier, delivered the package to the Kansas City address on the package. A woman, later identified as Alma Sumpter, opened the door and accepted the package. She signed a receipt for the package as "A. Williams" and, according to the undercover postal inspector, stated that she was the mother of the addressee, Tony Williams. She further stated that the package was for her son and that her son lived there.

The inspectors obtained a warrant to search the apartment and conducted the search shortly after the controlled delivery. They found the package, unopened, on a chair. Alma Sumpter was the only person present at the residence. When questioned, Sumpter denied any knowledge of or involvement with the package. She claimed that she had been advised to accept it for Rodney Thompson, her son's friend.

At the apartment, the officers found a scrap of paper with the name "Rodney" and a telephone number on it. Several traffic tickets issued to Dion C. McKenzie, with the name Erick Love crossed out below the name, were also found. Sumpter identified the tickets as having been left at the apartment by Thompson. She then

---

* The Honorable Harry W. Wellford, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

2. The inspectors removed the "crack" cocaine and replaced it with an object of similar weight before delivering the package.

agreed to call the telephone number on the scrap of paper regarding the package and allowed the conversation to be taped. Sumpter called the number and advised an unidentified female to tell Rodney that his package had arrived.

Approximately fifteen minutes later, Thompson appeared at the back door to Sumpter's apartment. He was arrested at that time. According to the undercover agents, Thompson identified himself as Dion McKenzie. He was carrying an identification card bearing the name Erick C. Love and two envelopes with the return address: Erick Love, 2843 Campbell, 3rd Floor, Kansas City, Missouri. That is the address of Alma Sumpter.

While Thompson was being escorted from the apartment, the regular mail carrier arrived at the scene. He identified Thompson as having inquired the day before as to whether the mail carrier had a package for him.

## SUFFICIENCY OF THE EVIDENCE

Thompson was convicted of attempting to possess with intent to distribute 50 grams or more of "crack" cocaine and with using a communication facility to facilitate that offense; he appeals the judgment. Thompson argues that a reasonably-minded jury could not have found him guilty, because the evidence presented by the government was insufficient to support a finding of guilt. He contends that the government failed to prove the knowledge and intent elements of the crimes with which he was charged. He asserts that the government's key witness, Alma Sumpter, was motivated to lie to protect her son, as she had done in the past, because there was evidence which suggested that her son was involved in narcotics trafficking. Moreover, Thompson was a friend of her son, James Sumpter, which would explain connections between Thompson and Alma Sumpter's apartment.

■ "When reviewing a defendant's claim of insufficient evidence, we must view the facts in the light most favorable to the government, giving it the benefit of all reasonable inferences that might be drawn from the evidence." *United States*

*v. Starcevic,* 956 F.2d 181, 183 (8th Cir. 1992). "[A]ll reasonable inferences must be resolved in favor of the jury's verdict." *United States v. La Guardia,* 774 F.2d 317, 319 (8th Cir.1985). When reviewing the denial of a motion for judgment of acquittal we will reverse for insufficient evidence only "if the evidence is such that reasonably-minded jurors *must* have a reasonable doubt as to the existence of any of the essential elements of the offense." *United States v. Powell,* 853 F.2d 601, 604 (8th Cir.1988) (emphasis in original). From our review of the record, we hold that the evidence was sufficient for the reasonably-minded jury to convict Thompson.

■ Issues of credibility and disputed fact are best left to the jury. *United States v. Martinez,* 958 F.2d 217, 218 (8th Cir.1992) ("It is the sole province of the jury to weigh the credibility of a witness."); *Bachman v. Leapley,* 953 F.2d 440, 441 (8th Cir.1992) (witness credibility is an issue for the jury). The jury was aware of Alma Sumpter's motives to lie and her history of lying to protect her son. Moreover, the government's case did not rely only on Alma Sumpter's testimony. There was other evidence of Thompson's guilt, including testimony regarding his own actions in response to the telephone call made by Alma Sumpter; the physical evidence connecting him to the Sumpter apartment, such as traffic tickets in the residence bearing his aliases and the envelopes with his alias "Erick Love" and the 2843 Campbell address; and the mail carrier's testimony regarding Thompson's inquiry into the whereabouts of a package on the day before the controlled delivery.

Thus, we hold that the evidence was such that a reasonable juror could have found guilt beyond a reasonable doubt.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Thompson next argues that he was deprived of a fair trial because his attorney was ineffective. He alleges that his attorney failed to adequately challenge the testimony of Alma Sumpter, the government's key witness. Specifically, Thompson

claims his attorney failed to play a tape recording of a conversation between Alma Sumpter and a postal inspector that he argues would have shown that the package was intended for James Sumpter, not him. Claims of ineffective assistance of counsel generally may not be raised on direct appeal, but rather are to be first presented in the district court pursuant to 18 U.S.C. § 2255. *United States v. Gallegos–Torres,* 841 F.2d 240, 242–43 (8th Cir.1988). Therefore, we decline to reach the merits of Thompson's ineffective assistance claim at this time.

## SENTENCING GUIDELINES

Thompson also argues that the federal sentencing guidelines are unconstitutional because they violate the Due Process Clause of the Fifth Amendment.[3] The court has extensively addressed this issue, upholding the constitutionality of the guidelines. *United States v. Nimrod,* 940 F.2d 1186, 1189 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992).

■ Finally, Thompson suggests that the district court erred in imposing a two-level enhancement of his base offense level for obstruction of justice under U.S.S.G. § 3C1.1. He argues that his use of an alias on an affidavit of financial status provided to a parole officer was not a materially false statement under U.S.S.G. § 3C1.1 n. 3(h). This court has held that a two-level increase is appropriate for use of an alias. *See United States v. Blackman,* 904 F.2d 1250 (8th Cir.1990) *(Blackman).* In *Blackman,* we held that the district court did not err in imposing a two-level increase under § 3C1.1 even though the police actually knew that the defendant was using an alias. *Id.* at 1259; *but see United States v. Rodriguez,* 942 F.2d 899, 901–02 (5th Cir.1991) (calling into question the reasoning in *Blackman* because of amendment in guidelines). Here, the police did not know Thompson's true identity,

therefore, a two-level increase was certainly appropriate.

Accordingly, we affirm the judgment of the district court.

---

**3.** Thompson also argues that the "career offender" portion of the guidelines is unconstitutional for double jeopardy reasons. We conclude that this argument has no merit. *Cf. United States v.*

*Thomas,* 930 F.2d 12, 14 (8th Cir.1991) (enhancement for criminal history does not violate double jeopardy).